<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

_____
:
THOMAS NEARY,                          :
                                       :
         Plaintiff,                    :
                                       :       Civil Action No. 00-3142 (JAG)
              v.                       :
                                       :               **OPINION**
THE BOROUGH OF RIDGEFIELD et al.,      :
                                       :
         Defendants.                   :
                                       :
NICHOLAS KOWATCH,                      :
                                       :
         Plaintiff,                    :
                                       :
              v.                       :
                                       :
BOROUGH OF RIDGEFIELD et al.,          :
                                       :
         Defendants.                   :
_____:

**<u>GREENAWAY, JR., U.S.D.J.</u>**

This matter comes before this Court on the motion for summary judgment filed by Defendants Borough of Ridgefield ("Ridgefield" or the "Borough"), Mayor Stewart Veale ("Mayor Veale"), John Bogovich ("Bogovich"), members of the Borough of Ridgefield Police Commission (the "Police Commission"), members of the Borough of Ridgefield Council (the "Council"), Thomas Gallagher ("Gallagher"), James Schroeder ("Schroeder"), Ken Sheridan ("Sheridan"), Richard Slotenborg ("Slotenborg"), and Richard Besser ("Besser") (collectively,

1

the "Defendants"), pursuant to FED. R. CIV. P. 56(c).  For the reasons stated below, this motion shall be granted, in part, and denied, in part.

## I.  BACKGROUND

Plaintiffs Thomas Neary ("Neary") and Nicholas Kowatch ("Kowatch," and, together with Neary, the "Plaintiffs") previously served as police officers in the Borough of Ridgefield. Plaintiffs also served as Crime Prevention Officers within the police department.

### A.  Political Speech

Neary became politically active in Ridgefield's mayoral election in 1999, when he publicly supported Democratic candidate John Quaregna ("Quaregna") in his campaign to unseat Mayor Veale.  Neary's support for Quaregna included making financial contributions, placing a sign on his lawn, wearing a t-shirt supporting the Democratic candidate, and attending political rallies.  Neary alleges that while handing out flyers at a polling location, Mayor Veale drove around the site several times and stated to Neary, "I'm the Mayor."

Kowatch asserted that he decided not to support Mayor Veale in the November 1999 mayoral campaign, and instead openly supported Quaregna's candidacy.  Kowatch demonstrated his political affiliation by making financial contributions, placing signs on his lawn, handing out political flyers, and attending Democratic rallies.

### B.  The Alleged Retaliation

On November 2, 1999, Mayor Veale defeated Quaregna in the mayoral election.  After his re-election, Mayor Veale withdrew funding for the Ridgefield Crime Prevention Program, in which Kowatch and Neary participated.

In or about January of 2000, the Council voted to establish a police investigatory

commission to investigate allegations of fraudulent overtime reporting within the Ridgefield Police Department.[1]  In May and August of 2000, Bogovich, who at the time served as Acting Deputy Chief of the Borough's police force,[2] filed formal disciplinary charges against Neary and Kowatch, respectively.  The charges against Neary contained a number of allegations, including, but not limited to, failure to maintain good moral character, conduct unbecoming a police officer, and conduct unbecoming an employee in public service.  Similarly, the twenty-five charges against Kowatch included failure to maintain good moral character, conduct unbecoming a police officer, making and filing false reports of official activities, conduct unbecoming an employee in public service, theft of services, and fraud.

C.     **The Prosecution of Neary's Disciplinary Charges**

Retired Judge Peter Ciolino, who was hired by the Borough to preside over Neary's disciplinary hearing, issued a decision in the form of proposed findings stating that the Borough had sustained its burden of proof on seven of the nine disciplinary charges.  On or about September 28, 2001, the Council, which determines the ultimate factual findings and the appropriate disciplinary action, adopted Judge Ciolino's findings and voted 5-0 to terminate Neary's employment.  Neary filed an action in the New Jersey Superior Court, Bergen County, challenging his dismissal, but Judge Peter E. Doyne, P.J.S.C., ultimately held that Neary's removal was appropriate.

---

[1] Prior to the establishment of the police investigatory commission, the Federal Bureau of Investigation (the "FBI") investigated the reporting of unauthorized overtime and "return time" entries, but ultimately decided not to file any charges. (Def. Statement of Facts ¶¶ 36-43; Pl. Br. 11.)

[2] During the period of time encompassed by Plaintiffs' claims, Bogovich held the rank of Sergeant, Acting Deputy Chief, and Chief of Police. (Def. Statement of Facts ¶ 3.)

3

**D.**     **The Prosecution of Kowatch's Disciplinary Charges**

Judge Ciolino also presided over Kowatch's disciplinary hearing. The Judge found that the Borough had carried its burden of proof with respect to eleven of the twenty-five disciplinary charges. Judge Ciolino concluded that Kowatch had claimed and received improperly overtime pay and "return time" credit for work he did not actually perform, and recommended that Kowatch be suspended for one year without pay. On April 28, 2003, the Borough adopted Judge Ciolino's factual findings and voted 4-2 to terminate Kowatch's employment. Kowatch filed a request for a trial *de novo* in New Jersey Superior Court, Bergen County, pursuant to N.J. STAT. ANN. § 40A:14-150. Judge Daniel P. Mecca, J.S.C., affirmed the convictions as to the disciplinary charges and upheld the penalty of removal. Kowatch filed an appeal to the New Jersey Superior Court, Appellate Division, but the appeal was ultimately dismissed on October 15, 2004 for failure to file a brief in a timely manner.

## II.  PROCEDURAL HISTORY

On June 26, 2000, Neary filed a Complaint against the Borough, Mayor Veale, Bogovich, the Police Commission, and the Council,[3] alleging that the budget eliminations, the disciplinary charges, and the employment discharge amounted to retaliation in violation of his right to free speech and freedom of association under the First Amendment and the New Jersey Constitution. On December 21, 2000, Kowatch filed a Complaint raising identical causes of action against the Defendants. On January 26, 2001, Magistrate Judge Ronald J. Hedges consolidated these actions. This case was reassigned by order of the Chief Judge to Judge Joseph A. Greenaway, Jr.

---

[3] In his complaint, Neary did not name Gallagher, Schroeder, Sheridan, Stolenberg or Besser as defendants.

4

on January 24, 2007.

Defendants filed a motion for summary judgment on March 30, 2007, arguing that Plaintiffs do not have sufficient evidence to prove their political retaliation claims. This Court adjourned the motion date to May 28, 2007, and then to June 25, 2007, as requested by Kowatch. To date, however, Kowatch has not submitted any opposition papers in response to Defendants' motion. Similarly, this Court granted Neary an extension until June 1, 2007 to submit his opposition brief; however, Neary did not file his opposition brief until September 19, 2007.[4]

### III.  LEGAL STANDARD

**Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S.

---

[4] Defendants submitted a Statement of Facts pursuant to L. CIV. R. 56.1 ("Rule 56.1 Statement"). Although both Neary and Kowatch are represented by counsel, Kowatch failed to submit any opposition papers, and Neary filed his opposition papers late. Before examining the merits of Defendants' summary judgment motion, therefore, this Court must first determine which, if any, of the Plaintiffs' filings it may consider when resolving this motion.

Due to Kowatch's failure to file a responsive pleading in opposition to Defendants' motion for summary judgment, this Court shall accept as true all facts pertaining to Kowatch's claims that are included in the Defendants' Rule 56.1 Statement. See Purdy v. Pa. Public Utility Comm'n, 2007 WL 3237458, at *1 (M.D. Pa. Oct. 30, 2007); Virgin Records Amer., Inc. v. Trinidad, 2007 WL 4264543, at *3 (D.N.J. Dec. 3, 2007).

In regards to Neary's late filing, Defendants argue that this Court should not consider Neary's opposition brief because it was not timely filed. This Court recognizes that Neary filed his opposition papers more than three months late, without seeking leave from this Court for another deadline extension. Although Neary's untimely filing blatantly disobeys this Court's directive, striking Neary's response would be too extreme a sanction for Neary's recalcitrant behavior. See Player v. Motiva Enter., No. 02-3216, 2006 WL 166452, at *3 (D.N.J. Jan. 20, 2006) (citing Stackhouse, 951 F.2d at 30). Therefore, Neary's untimely opposition brief will be considered by this Court in resolving the motion seeking the grant of summary judgment.

5

317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23). "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 Fed. App'x 174, 179 (3d Cir. 2006). This Court will not grant the entry of summary judgment without considering the merits of the unopposed motion. See Virgin Records, 2007 WL 4264543, at *3 (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991).

### IV.  ANALYSIS

**A.   Neary's Political Retaliation Claims**

Defendants argue that Neary cannot sustain a claim for political retaliation. When determining whether a public employee was unlawfully fired because of his protected speech activities, a three-step inquiry is employed. Czurlanis v. Albanese, 721 F.2d 98, 103 (3d Cir. 1983). "First, the plaintiff must show that the activity in question was protected." Id. If the plaintiff identifies a protected activity, "the plaintiff must then show that it was a substantial or motivating factor in the alleged retaliatory action." Id. If this second prong is fulfilled, the defendant then has the burden of proving that it would have taken the same action even in the absence of the protected conduct. Id.

Defendants concede that Neary's campaign activities constitute political speech protected

under the First Amendment (Def. Br. 4), and that his termination qualifies as adverse employment action. Defendants argue, however, that Neary's political retaliation claims fail because Neary cannot prove that his protected activity was a substantial motivating factor in the adverse action taken against him. To bolster this argument, Defendants state that Neary's termination was directly related to his overtime reporting violations, and that Mayor Veale's decision to withdraw funding for the Ridgefield Crime Prevention Program was the result of budgetary constraints.

In response, Neary offers a number of factual allegations that are unsupported in the record. Specifically, Neary argues that (1) Mayor Veale suspended and fired Neary before the FBI investigation terminated (Pl. Br. 12); and (2) Bogovich and patrolman William Candaletti ("Candaletti") contacted the FBI to file false allegations against Neary (Pl. Br. 9). However, Neary does not cite to any deposition testimony or affidavit to support his assertion that he was fired before the FBI investigation terminated. To the contrary, the Affidavit of John Bogovich states that the FBI concluded its investigation in November of 1999, and that charges were filed against Neary six months later, in May of 2000. (Def. Br. Exh. F at ¶¶ 16-21.)

In addition, Neary cites to deficient evidence to support his statement that Bogovich and Candaletti conspired to report false accusations to the FBI. In his deposition testimony, Bogovich states, "[Candaletti] asked me sometime in the summer of 1998 if you were called by the FBI, are you going to tell the truth. I said if I'm called, I am not placing my job in jeopardy. I am certainly going to tell the truth if I'm called." (Bogovich Dep. 9:1-14, Dec. 15, 2006.) Bogovich also testifies that he never called the FBI and reported allegations against Neary. (Bogovich Dep. 8:8-17, Dec. 15, 2006.) Furthermore, the record does not include any evidence

supporting the assertion that Candaletti filed a false FBI report.  In light of Bogovich's testimony, and with no conflicting evidence stating otherwise, this Court cannot conclude that there exists competent evidence supporting Neary's assertion that Bogovich and Candaletti filed false allegations with the FBI.

Neary also attempts, unsuccessfully, to fulfill the "substantial or motivating factor" prong by pointing to irrelevant evidence.  Neary argues that the Defendants' disciplinary charges clearly lack substance because the FBI chose not to file charges against him upon the conclusion of their investigation.  However, this exercise of prosecutorial discretion by the United States Attorney does not impact the Borough's decision to prosecute Neary, particularly where Judge Ciolino, the Council, and the Superior Court affirmed the Borough's disciplinary charges.

However, Neary's deposition testimony may satisfy the "substantial or motivating factor" prong.  In the deposition, Neary testified that Mayor Veale informed Chief of Police Lars Oyen ("Chief Oyen") that he was withdrawing funding because Neary had politically opposed him.  This statement creates a factual dispute surrounding the motivation behind Mayor Veale's alleged retaliatory act, one for a jury to resolve.

Defendants incorrectly argue that Neary's testimony constitutes inadmissible evidence.  "It is true that what is produced at the summary judgment stage must set forth evidence as would be admissible at trial . . . and thus must be reducible to admissible evidence."  Williams v. Borough of West Chester, 891 F.2d 458, 466 n.12 (3d Cir. 1989).  However, "Rule 56 does not require the nonmoving party to depose his own witnesses."  Williams, 891 F.2d at 466 n.12 (holding that hearsay evidence may be admissible if the out-of-court declarant could present the evidence through direct testimony at trial).

Mayor Veale's statement to Chief Oyen would constitute a party-opponent admission, and therefore is admissible as evidence against himself and the Borough.[5] FED. R. EVID. 801(d)(2). Neary could request or subpoena Chief Oyen to testify at trial regarding Mayor Veale's statement.

Parenthetically, Neary cannot offer Mayor Veale's statement into evidence against Bogovich, the Police Commission, or the Council, since they are neither the defendants that made this admission nor entities for which Mayor Veale acts as an agent. There exists no other competent evidence presented by the parties with which this Court can conclude that Neary's political speech was a substantial or motivating factor in his termination. Without such evidence, this Court accordingly must enter judgment in favor of Bogovich, the Police Commission, and the Council with respect to Neary's political retaliation claims.

**C.     Kowatch's Political Retaliation Claims**

As stated *supra* in Section III, A of this Opinion, Kowatch has not filed any response opposing Defendants' motion for summary judgment. Although an unopposed summary judgment motion does not automatically require entry of judgment in favor of the moving party, see Virgin Records, 2007 WL 4264543, at *3, Defendants' Rule 56.1 Statement does not include any genuine issues regarding material facts.

Defendants concede that Kowatch's campaign activities constitute political speech

---

[5] Mayor Veale's statement to Chief Oyen may also be admissible against the Borough because Mayor Veale is an executive official of the Borough, who made the statement within the scope of his duties as mayor. Under FED. R. EVID. 801(d)(2)(D), a statement is not hearsay if it is a statement by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. See Wilburn v. Robinson, 480 F.3d 1140, 1148 (D.C. Cir. 2007) (holding that statement by mayor was admissible hearsay against the government to support plaintiff's retaliation claim).

10

protected under the First Amendment, and that his termination qualifies as adverse employment action.  Nevertheless, the Rule 56.1 Statement does not state any facts indicating, or from which this Court could infer, that Kowatch's political activity was a substantial or motivating factor behind his termination, or any other adverse employment action allegedly taken against him.  First, although Kowatch alleges in his complaint that he was subject to a "campaign of harassment" designed to force him to resign (Kowatch Compl. ¶ 33), he neither alleged nor proved that these acts were related to his political activities.  Second, Kowatch was ultimately removed from the Ridgefield Police Force because he was found to have engaged in overtime reporting improprieties.  Last, Mayor Veale eliminated funding for the Ridgefield Crime Prevention Program because of budgetary constraints.  The Rule 56.1 Statement does not present any evidence that could satisfy the "substantial or motivating factor" element of Kowatch's political retaliation claims.  Judgment shall be entered in favor of the Defendants on Kowatch's claims.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment will be granted, in part, and denied, in part.  With respect to Neary's claims, judgment shall be entered in favor of Bogovich, the Police Commission, and the Council, due to Neary's inability to set forth competent evidence pertaining to the "substantial or motivating factor" element.  However, there exist triable issues of fact regarding Neary's political retaliation claims against Mayor Veale and the Borough.  As for Kowatch's claims, this Court finds that there exist no genuine issues as to any material facts precluding the entry of judgment in favor of the Defendants.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: December 26, 2007